BELL et al. v. ATLANTIC & P. R. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. September 10, 1894.)

No. 377.

RAILROAD COMPANY—RIGHT OF WAY—STATIONS IN CHEROKEE NATION.

The treaty between the United States and the Cherokee Nation of July 19, 1866 (14 Stat. 799), art. 11, grants to any corporation authorized by congress to build a railroad north and south, and east and west, through the Nation, a right of way not exceeding 200 feet wide, except at stations, etc., where "more may be indispensable to the full enjoyment of the franchise herein granted, and then only 200 additional feet shall be taken, and only for such length as may be necessary." By the act of the national council of the Cherokee Nation of December 14, 1870, there was reserved to the Nation at every railroad station one mile square, to include such station, for town sites, to be located by commissioners, whose duty it should be also to sell the lots, and report to the principal chief the locations, surveys, and sales of lots, etc. *Held*, that where such commissioners,

in 1871, surveyed and laid off a town, pursuant to such act, and set off to a railroad company authorized by congress to build through the Nation a strip of land in the town 400 feet wide, the company was entitled to the whole of such strip, as against a citizen of the Nation, or any other person entering thereon after the passage of the act reserving the town site to the use of the Nation, and a part of it not actually occupied or needed for present use by the company was not subject to appropriation by a citizen of the Nation as part of the public domain thereof.

In Error to the United States Court in the Indian Territory.

This was an action by the Atlantic & Pacific Railroad Company and the St. Louis & San Francisco Railway Company against L. B. Bell and H. H. Trott to recover possession of certain real estate. There was a judgment for plaintiffs, and defendants bring error.

S. S. Fears and W. T. Hutchings, for plaintiffs in error.

L. F. Parker (E. D. Kenna, on the brief), for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge.   This action was brought in the United States court for the first division of the Indian Territory by the defendants in error, the Atlantic & Pacific Railroad Company and the St. Louis & San Francisco Railway Company, to recover the possession of a small parcel of ground, particularly described in the complaint, with the improvements thereon, situated in Vinita, Cherokee Nation, Indian Territory, the plaintiffs alleging that the land claimed constituted a part of the right of way of the plaintiff the Atlantic & Pacific Railroad Company.   There was judgment for the plaintiffs in the lower court, and the defendants sued out this writ of error.   It is assigned for error that the court refused to instruct the jury to return a verdict for the defendants, and instructed them to return a verdict for the plaintiffs.

Article 11 of the treaty between the United States and the Cherokee Nation of July 19, 1866 (14 Stat. 799), provides that:

"The Cherokee Nation hereby grant a right of way not exceeding two hundred feet wide, except at stations, switches, water-stations, or crossing of rivers, where more may be indispensable to the full enjoyment of the franchise herein granted, and then only two hundred additional feet shall be taken, and only for such length as may be absolutely necessary, through all their lands, to any company or corporation which shall be duly authorized by congress to construct a railroad from any point north to any point south, and from any point east to any point west of, and which may pass through the Cherokee Nation.   Said company or corporation, and their employees and laborers, while constructing and repairing the same, and in operating said road or roads, including all necessary agents on the line, at stations, switches, water-tanks, and all others necessary to the successful operation of a railroad, shall be protected in the discharge of their duties, and at all times subject to the Indian intercourse laws, now or which may hereafter be enacted and be in force in the Cherokee Nation."

The plaintiff the Atlantic & Pacific Railroad Company was incorporated by act of congress of July 27, 1866 (14 Stat. 292), and authorized to construct a railroad through the Cherokee Nation upon a line and in a direction that entitled it to the benefits of the provisions of article 11 of the treaty above quoted.   The road was constructed through the Nation, and the parties have filed a stipula-

tion to the effect that the plaintiff the St. Louis & San Francisco Railway Company was operating the road for the Atlantic & Pacific Railroad Company, and that the two companies were jointly entitled to the possession of all the property of the Atlantic & Pacific Railroad Company in the Indian Territory. By an act of the national council of the Cherokee Nation, approved December 14, 1870, there was "reserved to the Cherokee Nation at each and every station along the line of any railroad through the lands of the Cherokee Nation one mile square, to include such station, in such manner as may be deemed advisable," for town sites. Provision was made for the appointment of three commissioners, "whose duty it shall be to locate and survey said town sites and sell the lots thereof  *  *  * and report to the principal chief, the locations, surveys and sales of lots" on the 1st day of October of each year. Under this act, three commissioners were appointed in 1871, and proceeded to locate and lay off the towns at the railroad stations. Among the towns so surveyed and laid off was Downingville, now called Vinita. The Atlantic & Pacific Railroad Company had constructed its road to and through this place where it crossed the Missouri, Kansas & Texas Railway, the north and south railroad constructed under the treaty. The commissioners located and surveyed the mile square at Vinita station, and laid it off into lots, blocks, streets, alleys, parks, and railroad rights of way. They made a plat of the town as laid out, which, together with their report, they filed with the principal chief of the Nation, as required by law, and from that time this plat has been accepted as an official plat of the town by the Nation and the public. The Nation sold the lots in the town, and the purchasers bought them according to this plat, and in reliance upon it. It has become a muniment of title to every property holder in the town. This plat shows that the commissioners surveyed and set off to the Atlantic & Pacific Railroad Company a strip of land 400 feet in width through that portion of the town lying west of the Missouri, Kansas & Texas Railroad; 100 feet of this strip being on the north side, and the remaining 300 feet on the south side, of the railroad track. The testimony shows that this strip of land was surveyed and set off by the commissioners to the railroad company, at its request, for right of way, depot grounds, side tracks, stock yards, and other railroad purposes, under the provisions of the treaty of 1866. Upon these facts, the plaintiffs below were clearly entitled to the full and exclusive possession and use of this strip of land as against a citizen of the nation or any other person entering thereon, after the passage of the act reserving the town site to the use of the Nation, and after the survey and dedication by the commissioners of the right of way to the railroad company.

The plaintiffs in error assert that, under the laws of the Nation, a citizen has the right to occupy any part of the public domain of the Nation not already taken up by another citizen; and that as the parcel of land in controversy was not actually occupied by the tracks or other structures of the railroad company, and as it was, in their opinion, not necessary for such purposes, they had the right to appropriate it to their own use. But the land had been previously dedi-

cated and appropriated under the treaty and by the act of the council to the use of the railroad company. The fee of lands in the Cherokee Nation is in the Nation. Whatever right a citizen has to occupy any particular parcel of the public lands of the Nation he must acquire under and in pursuance of the laws of the Nation, and not in defiance of them. He cannot enter upon land previously dedicated or appropriated to some other person or to some specific use. By act of the national council, this mile square was segregated from the public domain of the Nation, and reserved to the Nation for a special use, and to be disposed of in a particular manner. It was believed the land in proximity to the railroad stations would have a special value for town sites. A mile square at each station was therefore reserved to the Nation to be laid out in lots and blocks, not to be settled upon by the first comer, as is the case with the public domain generally, but the lots to be sold to the highest bidder, and the purchase money paid into the treasury of the Nation, as was done. The authority of the commissioners to lay out the town necessarily made it their duty to lay out and fix the boundaries of the land in the town set off to the railroad company for its station, side tracks, stock yards, and other like purposes. This was done, and their action has been acquiesced in and approved by the authorities of the Nation, legislative and executive. Whether there was any necessity for making the right of way 400 feet wide was a question between the Nation and the railroad company. Under the treaty, the railroad company had a right to demand 400 feet when that much was indispensable to the full enjoyment of its franchise. The citizen cannot settle on the right of way, and, when his right to do so is challenged, reply that the right of way set off to the company was in excess of its needs, and claim the right to settle upon it as a part of the public domain of the Nation. It is clear that it was never contemplated that there should be within the limits of these towns any unappropriated public domain subject to settlement under the general law on that subject. The disposition of the land within the limits of these town sites is regulated by laws specially applicable to them. It is not material to inquire whether the railroad company acquired the fee in this ground, or only an easement. In either case it acquired a right to the exclusive possession and use of it, as against the defendants. The judgment of the lower court is affirmed.