## DAVENPORT vs BUFFINGTON.

### Opinion delivered April 2, 1898.

*1. Sale of Public Park—Right of Taxpayer to Enjoin.*

> A taxable inhabitant of a city has the right to maintain an action in his own name to restrain the sale of a public park which has been duly dedicated, if he suffers a personal injury thereby, and he may enjoin one attempting to build in such park from doing so.

*2. Dedication of Town Site by Indian Nation.*

> While the Cherokee Nation could not part with the title to land set apart for a town site, it could dedicate the use and occupancy of said town site, and it will be bound by such dedication.

*3. Pleading—Sale of Lots by Cherokee Court—Res Judicata.*

> The complaint alleged the issuance of an injunction restraining the sale of the lots in controversy by the Cherokee court. *Held*, That on the consideration of the demurrer under such allegations, the matter will be considered as res judicata.

Appeal from the United States court for the Northern district.

WM. M. SPRINGER, Judge.

T. M. Buffington, as mayor of the corporate town of Downingville, together with others, filed a bill in equity asking for an injunction restraining James S. Davenport from building in and fencing part of the park. Defendant filed a demurrer, which was overruled. Defendant appeals. Affirmed.

This was a bill in equity, brought by T. M. Buffington, who is described as mayor of the corporate town of Downingville, Ind. Ter., J. C. Gray, T. F. Thompson, and W. H. Tarrant against J. S. Davenport. The three first named complainants state that they and the defendant are citizens of the Cherokee Nation, and W. H. Tarrant, complainant, states he is a citizen of the United States. This bill charges that the Cherokee Nation did, on the 14th day of December, A. D. 1870, by legislative enactment, reserve for settlement "one mile square" at all railroad stations for town sites; that the same act created the office of town commissioners, to be filled by persons appointed by the principal chief; that in 1871 said commissioners were appointed, and the act also defined their duties; that said commissioners did "locate and survey" one mile square at the junction of the M., K. & T. and the Atlantic & Pacific railroads; that they divided the land into streets, avenues, alleys, blocks, lots, and public parks; that they made a map or plat showing the lots, streets, parks, etc.; that they advertised the survey made by them as the town of Downingville, and offered lots for sale on October 13, 1871, exhibiting the map or plat of the town showing location of lots, etc., and that some of the plaitiffs bought lots as indicated by said map; that said commissioners made a report of the survey, and of the lots sold, and said report and map were approved by the national council of the Cherokee Nation; that in 1873 the national council created the corporation of "Mayor and Town Council of the Town of Downingville," by legislative act; that in pursuance of said act, on the first Monday of the following December, the citizen voters elected a mayor and five town councilmen, and they organized and took possession of the property of said town, including streets, alleys, and two parks, etc., as defined in the map of said town, and "for 23 years they have exercised complete and undisputed ownership and control of the streets, alleys, and two parks afore-

said"; that they have raised money by taxation, and improved the streets and these parks, and improvements have been built up around these parks, and the national council, by remaining silent while the citizens were buying and building facing such parks, show acquiescence in the dedication of said parks to the citizens of the corporate town of Downingville; that said national council, by an act approved December 4, 1896, authorized town commissioners to survey into streets and alleys, lots, etc,, said parks, and to sell the lots embraced in the same; and the town commissioners did advertise, and on the 26th day of January, 1897, did proceed to sell said lots, and the defendant purchased a lot in one of said parks, and is proceeding to improve the same; said act also provides that the proceeds of the sale of said lots shall go into the treasury of the Cherokee Nation, and not to the town of Downingville; that an injunction was issued by the judge of the circuit court of Coowns-oo-wee district, enjoining T. A. Chandler, town commissioner, from surveying and selling said parks, but said commissioner disregarded the same, and proceeded to survey and sell said lots. J. C. Gray charges for himself that in January, 1891, he bought property abutting one of said parks, and "in order that his property might always open upon this public park,"'and built improvements to the value of $2,500 on the same; that defendant is fencing a part of said park opposite his property, and thereby materially is damaging his property. T. F. Thompson charges for himself that in 1877 he purchased property facing said park, and placed improvements of the value of $200 on same, and that he is damaged in person and property by the act of defendant in fencing part of said park. W. H. Tarrant charges for himself that he is a resident and taxpayer of the corporate town of Downingville; that he is a citizen of the United States, and, as a taxpayer, "he has an interest in all the public property of and belonging to the corporate town of Downingville"; that he has a

wife and four children; that he has an interest in the public parks, "for the amusement, recreation and enjoyment of his wife and children, and for the social, commercial, and sanitary purposes of the town"; that, as a taxpayer of the town, he is especially interested in the sale and expenditure of the fund arising·from the sale of the public property belonging to the town; that the sale and appropriation of the funds is a violation of his rights as a citizen and taxpayer of the town; that he is injured by the defendant in fencing off a lot on said park. Plaintiffs asks for temporary injunction. Defendant demurred to the complaint upon the following grounds: (1) There was a defect of parties plaintiff, apparent upon the face of the complaint; (2) want of jurisdiction over the subject matter; (3) that Tarrant was only joined nominally in the complaint for the sole purpose of enabling the other plaintiff to invoke the jurisdiction of the court, and the complaint did not show he had any common interest, or state of facts to show he was entitled to any equitable relief; (4) general want of equity,—which demurrer was overruled by the court, to which ruling of the court defendant excepted. Thereupon defendant refused to plead further in this case; whereupon the court granted the injunction as prayed for in the bill, and made the same perpetual, to which judgment of the court defendant excepted, and prayed an appeal to to this court.

*G. B. Denison* and *Hutchings & English,* for Appellants.

1. The court had no jurisdiction because all of the plaintiffs except Tarrant were citizens of the Cherokee Nation. If Tarrant was exercising any property rights in the Cherokee Nation, he was doing so contrary to the laws of the United States and the treaties made with the Cherokee Nation. Treaty of 1866, Article 8, 27.

2. The court cannot interfere to prevent a city from selling park property when empowered by the legislature to do so, and the adjoining owners of property have no enforceable rights against the city. Brooklyn Park Commissioners vs Armstrong, 6 A. R. 76. The nation never parted with the title to said park and it never sold anybody any interest in adjoining property except the right of temporary occupancy, and therefore has power to do away with, sell or otherwise dispose of said property within the limits of the law. Clark vs Providence, etc., 1 L. R. A. 725; 1 Dillon on Mun. Corp. 598; Smith vs Huston, 6 Ohio 101; 17 A. & E. Enc. Law, p, 417. Even where the parties have bought property near a park and maintained that they had a vested right in the continuance of the park as such, the courts have allowed only such persons to complain who had a fee simple title to property facing the park. Price vs Thompson, 48 Mo. 361; Gall vs Cincinnati, 18 Ohio St. 563. Tiff vs City of B., 65 Barb. 460; 2 High on Injunction, § § 1301, 1053.

*Preston S. Davis*, for appellee.

1. W. H. Tarrant was lawfully residing in and holding property in the Cherokee Nation under the law thereof. Compiled laws of the Cherokee Nation of 1892, § § 652, 653, 654, 658. The plaintiff, Tarrant, is a tax payer in said town, and therefore he has such an interest in the public and corporate property of said town as will enable him single handed and alone to invoke the aid of a court of equity to restrain the defendant from selling said park. 2 Dillon on Mun. Corp. § 914-919; Compton vs Zabriskie, 101 U. S. 601; Webster vs Harrington, 32 Conn. 131; Drake vs Phillips, 40 Ill. 388; Grant vs Davenport, 36 Iowo 396; Gifford vs Railroad Co., 10 N. J. Eq. 171; Baltimore vs Gill, 31 Md. 375; Hooper vs Ely, 46 Mo. 505; Town of

Jacksonville vs Watson, 33 Ark. 704; Ranson vs Boal, 29 Iowa 68; s. c. 4 A. R. 195; 2 High on Injunctions § § 1236, 1237, 1238, 1269, 1553, 1555; 1 Id. § 855; Commings vs City of St. Louis, 2 S. W. 130; The County of Harris vs E. W. Taylor and Peter Gabel, 58 Tex. 690; Wheeler and Wife vs Bedford (Conn.) 7 Atl. 22; Brown vs Manning, 6 Ohio 298; Beatty vs Kurtz, 2 Pet. (U. S.) 212; Newmeyer vs Mo. & Miss. Ry. Co., 52 Mo. 8; s. c. 14 A. R. 394; Hooper vs Ely, 46 Mo. 505; Steins vs Franklin County, 48 Mo. 167; Christopher vs The Mayor, 13 Barb. 567; Milham vs Sharp, 15 Barb. 195; Stuyvesant vs Pearsall, 15 Barb. 244; DeBaun vs The Mayor, 16 Barb· 392; Wood vs Draper, 24 Barb. 187; Sharpless vs The Mayor of Philadelphia, 21 Penn. St. 147; Mercer County vs Pittsburg and Erie Railway Co., 27 Penn. St. 104; Page vs Allen, 58 Penn. St. 338; Moers vs City of Reading, 21 Penn. St. 188; Mott vs The Penn. Ry Co., 30 Penn. St. 9; The Mayor and Council of Baltimore vs Gill, 31 Md. 375; City of New London vs Brainard, 22 Conn. 552; Webster vs Town of Harwinton, 32 Conn. 131; Merrill vs Plainfield, 45 N. H. 126; McMillan vs Lee County, 3 Iowa 311; Collins vs Ripley, County Judge, 8 Iowa 129.

2.   The town site of Dowingville, together with the parks shown on the plat thereof, was duly dedicated to the public.   Laws of the Cherokee Nation, Ed. of 1881 p. 314, article entitled "Authorizing the settlement of towns at railway stations." Same beginning with article 4 on page 253, article headed "Incorporating the towns of Ft. Gibson and Dowingville" and ending with section 30 of said article on page 295. Bell et al, vs Atlantic & Pacific Ry. Co. et al, 53 Fed. 417; 11 C. C. A. 271.

TOWNSEND, J.   (after stating the facts )   The appellant has assigned two specifications of error, as follows: (1) "The court erred in overruling the demurrer of the defendant to the complaint of the plaintiff." (2)  "The court

erred in overruling the defendant's demurrer, and granting a perpetual injunction against said defendant.''

It is hardly necessary at this time, since the abolition of the Indian courts, to discuss the first and third grounds of demurrer, that go to the joining of W. H. Tarrant as a plaintiff, in order to give the United States Court jurisdiction, Tarrant being a United States citizen. There would be no serious contention that, so far as jurisdiction is concerned, the United States Court would now have jurisdiction of all the parties. But does not Tarrant, as a resident and taxpayer (which he alleges himself to be in the complaint, and the demurrer admits it,) have the right to bring this bill? ''If the property or funds of a municipal corporation be illegally interfered with, action may be brought in the name of the corporation, or in the name of any inhabitant of the municipality, and particularly in the name of any taxable inhabitant. Such a right is necessary in the case of municipal and public corporations. If it were denied, they would be liable to be plundered, and the taxpayers and property owners, on whom the loss would eventually fall, left without effectual remedy.'' 2 Dill. Mun. Corp. § § 914–919, inclusive. See, also, Crampton vs Zabriskie, 101 U. S. 601; Town of Jacksonport vs Watson, 33 Ark. 704; 1 High, Inj. § 855; 2 High, Inj. § 1553. In Cummings vs City of St. Louis (Mo. Sup.) 2 S. W. 130, it is held: ''Where land in a city has been dedicated by the owner to the public, and the city, by an ordinance, had directed the same to be sold, an individual if injured in his individual rights, either as to his person or property, may prosecute a suit, and enjoin the city from carrying the ordinance into execution.'' In Brown vs Manning, 6 Ohio 298, which was a suit to enjoin the proprietors who dedicated the land to public use from appropriating to private use a square included in the dedication the court say: ''It sufficiently appears that the plaintiff is one of the inhabitants of the town, living and holding pro

perty contiguous to the square, the value of which is affected
by the dedication. He is therefore not a volunteer, assuming
to protect the rights of others, but entitled to this remedy
for the protection both of his individual and his common
interests." In the case at bar, Gray and Thompson, plain-
tiffs, both own property fronting on the park. See, also,
Wheeler vs Bedford (Conn.) 7 Atl. 22, and Newmeyer vs
Railroad Co., 52 Mo. 81.

*Right of tax-
payer to
bring suit.*

Appellant insists, however, that there was no dedica-
tion in this case by the Cherokee Nation, because the Nation
could not part with the fee-simple title. While that is true,
without first having the consent of the United States govern-
ment, there is no question but what they could dedicate the
use and occupancy of this mile square for town-site purposes,
and will be bound by their dedication. The law governing
the dedication of property to public use unquestionably
should apply, by analogy, to this dedication, to the extent to
which they could and did act as to any other proprietor. But
this very action of the Cherokee Nation has already been
considered by the United States Circuit Court of appeals in
Bell vs Railroad Co., 63 Fed. 417, 11 C. C. A. 271. In that
case, Judge Caldwell, in delivering the opinion of the court,
says: "The commissioners located and surveyed the mile
square at Vinita Station, and laid it off into lots, blocks,
streets, alleys, parks, and railroad rights of way. They
made a plat of the town as laid out, which, together with
their report, they filed with the principal chief of the Na-
tion, as required by law; and, from that time this plat has
been accepted as an official plat of the town by the Nation
and the public. The Nation sold the lots in the town, and
the purchasers bought them according to this plat, and in
reliance upon it. It has become a muniment of title to every
property holder in the town." This action amounts to a
dedication of the use and occupancy of this land to the resi-
dents of Vinita by the Cherokee Nation, and it is beyond the

*Dedication.*

power of the Cherokee Nation to rescind it. Cummings vs City of St. Louis (Mo. Sup.) 2 S. W. 130; County of Harris vs Taylor, 58 Tex. 690; Brown vs Manning, 6 Ohio 298; People vs Underhill, 23 N. Y. Supp. 388, 69 Hun. 86. Also, see the leading case, City of Cincinnati vs White's Lessee, 6 Pet. 431, and cases cited. Under the allegations of the complaint, we think the doctrine of res adjudicata can be invoked. Freem. Judgm. (3d Ed.) §§ 248, 249; 1 Van Fleet, Former Adj. pp. 90, 91; Story, Eq. Pl. §§ 780–782. We are of the opinion that the court below properly overruled the defendant's demurrer, and that the decree of the court making the injunction perpetual against the defendant should be sustained. The decree of the court below is therefore affirmed.

CLAYTON and THOMAS, JJ., concur.