CHOCTAW, OKLAHOMA & GULF RAILROAD CO. vs NICHOLAS.

Opinion Delivered October 27, 1899.

1. *Mining Companies—Negligence in Placing Prop—Evidence.*

In a suit against a mining company for negligence for placing a prop too near a track upon which coal cars were running, plaintiff sustained the injury complained of by reason of a car striking said prop and knocking it out of place, thereby causing the

roof of said mine to fall and injure plaintiff. The undisputed testimony showed that the prop was not less than twelve inches from the track. That it was so placed as to render the mine reasonably safe at that place. *Held*, No negligence is shown on the part of the defendant, and the court should instruct a verdict for the defendant.

2.  *Time Switch used Immaterial.*

When the time which a switch has been used is not shown to have contributed in any way to the injury complained of, evidence as to the time it has been used is immaterial.

3.  *Pleading—Evidence—Variance—Verdict Not Sustained.*

As the pleadings do not allege any defect in the construction of a coal car which struck a prop and knocked it out of place and caused the injury complained of, or a defect in the manner in which the track was laid, evidence on such grounds is improperly admitted and will not sustain a verdict in favor of plaintiff.

4.  *Duty of Court to Direct Verdict.*

When there is not sufficient evidence to support the essential allegations of the plaintiff's case it is the duty of the court to direct a verdict for defendant.

Appeal from the United States Court for the Central District.

WILLIAM H. H. CLAYTON, Judge.

Action by Scott Nicholas against the Choctaw, Oklahoma & Gulf Railroad Company. Judgment for plaintiff. Defendant appeals. Reversed.

This suit was brought by Scott Nicholas against the Choctaw, Oklahoma & Gulf Railroad Company to recover damages alleged to have been received while in the employ of said company as a coal miner in a mine operated by the defendant in the town of Alderson, Choctaw Nation. Plain-

tiff alleges that he was injured by the falling of a large amount of slate and stone from the roof of the mine, which fell upon him, and permanently injured him. As the pleadings were finally amended, plaintiff alleges two specific acts of negligence on the part of the defendant: (1) That the defendant company carelessly and negligently failed and omitted to timber or scaffold that portion of the mine where the accident occurred. (2) That the defendant company carelessly and negligently placed a prop or post too near the track used by the plaintiff and other employes of the defendant in hauling and removing coal from the mine of the defendant; that said post was placed so near the track as to be struck by the cars used in said mine as the said cars passed andrepassed said prop or post; and that the car in charge of the plaintiff at the time of the accident did, while on the track, strike and knock down said prop or post. The defendant denies each and every one of the allegations contained in plaintiff's complaint as amended, and set up the contributory negligence of the plaintiff. The plaintiff recovered a verdict and judgment for $5,000 damages, from which this appeal is prosecuted .

*J. W. McLoud* and *C. B. Stuart*, for appellant.

*S. A. & Wallace Wilkinson*, for appellee.

SPRINGER, C. J. The appellant alleges errors as follows: (1) Because the verdict of the jury is not sustained by sufficient evidence, and the proof does not correspond with the allegations contained in the complaint. (2) Because the verdict of the jury is contrary to law. (3) Because the court refused to direct the jury to return a verdict in favor of the defendant. (4) Because the court erred in refusing the instructions asked for by the defendant, and excepted to at the time. (5) Because the court

erred in giving instructions asked for by the plaintiff and excepted to by defendant. (6) Because the proof shows beyond controversy that the plaintiff was guilty of contributory negligence. (7) Because the verdict of the jury is excessive, appearing to have been given under the influence of passion or prejudice.

The first, second, and third specifications of error, above set forth, will be considered together, for, if the verdict is not sustained by sufficient evidence, the court erred in refusing to direct the jury to return a verdict in favor of the defendant. This necessitates a very careful consideration of all the facts and all the evidence in the case. The first allegation of negligence on the part of the defendant company is that the defendant company carelessly and negligently failed and omitted to timber or scaffold that portion of the mine where the accident occurred. The uncontradicted evidence upon this point is to the effect that the roof of the mine at this place was supported, to prevent its caving in, by a prop or post; that the prop or post itself was sufficiently strong to support the roof. In the plaintiff's original complaint it was alleged that the prop or post which was used to support the roof at this place in the mine was too small, and too weak, and by reason of its weakness the said post or prop did break and fall, and permit the slate and rock to fall upon and crush the plaintiff. This contention was abandoned upon the trial by the plaintiff, he having conceded that the prop itself was sufficiently strong to support the roof. The allegation in question does not involve the sufficiency of the post or prop which was actually used, but that the defendant company failed "to timber or scaffold that portion of the mine where the accident occurred." It is conceded that the prop was placed there, but it is contended that the defendant failed to timber or scaffold. Plaintiff testifies that he never noticed any precaution taken to timber the place where the accident occurred, except the

placing of the prop. This fact is conceded by the defendant company. The question then recurs as to whether the prop of itself was such a support that it made the mine reasonably safe at that point. It was the duty of the defendant, as the court below held, and instructed the jury, to exercise care to provide a reasonably safe place in which its employes might perform their work, and the mine owner must use reasonable diligence to keep this place in a reasonably safe condition so that the servant or employe may not be exposed to unnecessary risks; and this care and diligence must be commensurate with the character of the service required, and with the dangers that a reasonably prudent man would apprehend under the circumstances of each particular case. If it appears, therefore, from the evidence in the case, that the support placed at this portion of the mine was sufficient to render it reasonably safe, the allegation of negligence on the part of the defendant on this account would not be sustained. Wiley Clark, one of the witnesses for the plaintiff, testified that the roof of the mine at this point was bad; that it was all shattered loose from the sides; but he nowhere states that the prop or post which was placed under it was not sufficient for its support, for he states, "If the car passed the post, it would be all right." This is substantially all of the testimony of plaintiff upon this point. Taylor Thomas, a witness called by defendant, testified that he was one of the persons who blasted out the slate on the roof of the mine at this point, and that he left the roof in a good condition; that all the material was taken down that could be removed, and that the mine was timbered up. He states as follows: "We timbered two rows of props before we blasted it for protecting the slate from spreading over it to make the shots work down." And further: "After we got through, we put a prop right in that corner where the dip switch goes down, to make it secure." He further says: "It was a good prop; the best that could be found. The

defendant introduced as a witness L. W. Bryan, the mine inspector appointed by the interior department for the Indian Territory. His evidence was in the nature of a deposition, which was read to the jury. He stated that the entry was fairly well propped all the way through, and that the mine at this point was propped and timbered in a manner that was usual and customary in well-regulated mines; that he considered it very well-timbered, and reasonably safe, as much so as any well-regulated mine in the Indian Territory. He was asked his opinion as to the ability of a mining company to absolutely guard against the falling of slate or rock, to which he stated that it could not be done. He said that slate and rock were liable to fall from the roof of a mine at any time, even in the best regulated mines; that it could not absolutely be guarded against; that the mine in question was well taken care of; that the percentage of accidents there has been as light as one could expect; that what happened in this case was liable to occur at any time; that it was one of the risks of the business. S. Guerrier, a witness called for the defendant, testified that he was an attorney at law, and special agent for the Missouri Pacific Coal Mines, and that he had had considerable experience in the operation of coal mines; that he was well acquainted with Mr. Bryan, the government mine inspector of this territory, and that he considered Mr. Bryan as an expert in the operation and construction of mines, timbering, etc. Joseph Murphy, a witness called for the defense, testified that he was the coal-mine inspector, and that he had had experience in mining for 35 years. He stated that the prop or support to the mine was put up under his direction, and that he considered it safe, and that it was put up in a workmanlike manner. A. W. Breckinridge, a witness called on behalf of the defendant, testified that he was the mine foreman; and had worked in mines for about 23 years; that the prop which supported the roof had a good solid cap piece, about nine

inches long, which was wedged in; that he inspected the mine at this point, after the work was completed, and, in his judgment, it was a reasonably safe place for men to work after it was completed; that he did not see anything to keep it from being safe; that every thing was in good shape. G. B. Wheeler, a witness called by the defense, testified that he was the gas inspector of the mine; that he remembered distinctly the prop in question, and that he saw it just before the accident, and that it looked all right. The foregoing is substantially all the testimony in reference to the first allegation of negligence on the part of the defendant company. There is no conflict in this testimony, and it clearly establishes the fact that the mine was properly timbered or scaffolded at the place where the accident occurred, and that no negligence can be imputed to the defendant company on this account.

The other allegation of negligence on the part of the defendant company is to the effect that the defendant carelessly and negligently placed a prop or post too near the track used by the plaintiff and other employes of the defendant in hauling and removing coal from the mine, so near that passing cars struck it, and that the car which was being operated by the plaintiff in this case struck this post, knocking it down, and thus precipitated a portion of slate roof upon plaintiff, causing his injury. The question to be determined on this point is, was the prop placed at a safe distance from the track? All the testimony set forth in reference to the first allegation of negligence is also applicable to the point in question, and need not be repeated. The same witnesses testified in reference to the second allegation of negligence. Scott Nicholas, the plaintiff, testified, that a nut on the end of the car struck the post, and knocked it out. He was asked. ''How came this car to strike the post?'' His answer was, ''It must have been a car which was out of gauge;'' that is, he explained, a car which was

too wide. He further testified that he had not made any ex-
amination of the place where the post was setting, and that
he did not know about this loose rock before it fell; that he
had no idea of its falling; and that he had not seen any crack
or break in the slate. His only statement in reference to the
proximity of the post to the track was: "That the post
must have been close enough for the nut on the side of the
car to strike it, and that the car was on the track when it
struck the post." Wiley Clark, a witness for the plaintiff,
testified that the post that was struck was about 12 or 13
inches from the dip switch track, and about 18 inches from
the track on the main entry. He also stated that the nut did
not stick out from the side of the car over 1½ or 2 inches,
and he stated that a good car would not strike the post at
all; and further he testified that the post had a board placed
over the top of it 6 or 8 inches or a foot long. and that it was
put there in order to hold the top in its place, and also to
hold the weight,—to give it surface. This was all of the
testimony of plaintiff upon this point. Taylor Thomas, a
witness for the defense, whose testimony on the first allega-
tion of negligence has been referred to, testified that the
post or prop was placed from 18 inches to 2 feet from the
track in the entry, and that it was placed about 18 inches
from the track in the dip switch; that it was a good prop,—
the best that could be found,—and larger than the ordinary
size used; that it was perfectly sound; that a cap was placed
over it and driven tight,—wedged in; that the sides of the
entry were protected by short rows of props on each side all
the way down, put in about 18 inches apart, and that the
prop that was put in there was put in as an extra precaution,
because there was a very wide space between the two ribs
and the upper row; that the prop was put in in the usual and
customary manner of well-regulated mines. He states, "I
put it in the best I could." The testimony of L. W. Bryan,
quoted above, on the first allegation of negligence, is direct-

ly in point upon this second allegation of negligence. Griff West testified that the post or prop in the roof of the dip switch was outside of the ties,—cleared the ties. John Murphy testified that the prop, in his judgment, was 18 or 20 inches from the right-hand rail of the dip switch, and that he considered the prop safe, and put in in a workman-like manner; that he considered that this prop, in connection with other props there, made this place reasonably safe for men to travel and do work in. He said further that, if it had not been so regarded by him, he would have changed it; that it was his business to see that it was safe, as far as practicable. A. W. Breckinridge testified that a solid cap piece about 9 inches long was placed above the prop, and wedged in; that he inspected the work after it was complet- ed, and that it was a reasonably safe place for men to work in; and, further, that he concluded that it was safe; that he did not see anything to keep it from being safe; that every- thing was in good shape; that the prop was about 18 inches from the right hand rail of the dip switch. The foregoing is substantially all the testimony on this point. It will be seen that there is no conflict in the evidence. It is conclu- sively established that the post was placed outside of the ties upon which the track rested, and that it was not less than 12 inches from the track of the dip switch; that all of the per- sons engaged in its construction, together with Mr. Bryan, the government mine inspector, were of the opinion that the prop was so placed as to render the mine reasonably safe at that point. There is nothing in the evidence quoted, or in the record, which tends to show negligence on the part of the defendant company in the placing of this post or prop. It is true that there is considerable conflict in the testimony, as appears in the record, on other and collateral proposi- tions. The material issues in the case seem to have been lost sight of on the trial. The witnesses for the plaintiff asserted very positively that the dip-switch entry had been

opened and in operation for two or three months, while the witnesses for the defendant insisted with equal earnestness that the entry had only been built the morning before the accident happened. The testimony in rebuttal on both sides was confined to this point, and the witnesses, upon being recalled, were all positive as to the statements previously made by them. If this were a material issue in the case, this conflict of testimony would make it necessary to submit the case to the jury; but it is wholly immaterial whether the switch entry had been built a day or a month or a year. Time was not of the essence of this contention. The questions were whether the roof had been properly protected, and whether the post was set at a proper distance from the track to render the safe passage of cars, and not when the entry was opened for the operation of the mines.

There is also a conflict of evidence in the case as to whether the car struck the post while it was on the track, or whether it jumped the track previously to striking the post. If the car struck the post while it was on the track, the defect was in the car in spreading too wide, and not in the location of the post. But there is no allegation in the complaint, or contention on the part of the plaintiff, that the car was improperly constructed. Hence, if there were negligence on the part of the defendant in this matter, such negligence has neither been alleged nor proven. If the car jumped the track before the post was struck—which theory is supported by the physical facts which existed after the accident took place,—the defect was either in the manner in which the track was laid, or the accident was caused by the negligence of the plaintiff; in either of which events the plaintiff could not recover, for the reason that no allegation is made in the complaint of improper construction of the track. And, if the accident was caused by the plaintiff's negligence, he could not recover. It is well settled by all

(5)

the authorities that where there is not sufficient evidence of the facts essential to the plaintiff's case, or the defendant's affirmative defense, a verdict should be directed. See 6 Enc. Pl. & Pr. (N. S.) p. 686, and numerous authorities there cited. There having been no sufficient evidence in the case at bar to support the essential allegations of the plaintiff's case, it was the duty of the court, when requested by the defendant, to direct a verdict. It was error to refuse this motion. Railway Co. vs Driggers, 1 Ind. Ter. Rep. 412; (45 S. W. 128.) It appearing from the evidence in this case that the defendant has not been guilty of any negligence which was the proximate cause of the injury complained of, the judgment of the court below is reversed, and the cause remanded.

THOMAS and TOWNSEND, JJ., concur.