ASHBEL SCOFIELD *vs.* EIGHTH SCHOOL DISTRICT.

The inhabitants of a school district have no right to use the school-house of the
district for religious meetings and Sunday schools, against the objection of
any tax-payer of the district, even though the district may have voted to
allow such use. And an injunction will be granted against such use, on the
application of such tax-payer, although the injury to him may be very slight,
as he has no other remedy. [Ellsworth and Sanford, Js., not fully concur-
ring in the former position, and dissenting as to the latter.]

PETITION for an injunction to restrain the respondents
from using the school-house of the district for religious pur-
poses. The facts were specially found by the court.

The respondents were an incorporated school district of
the town of Stamford, regularly organized according to the
laws of the state with regard to school districts, and the pe-
titioner resided within the district and was the owner of real
and personal estate within the same. The school-house in
question was erected by the district in the year 1854, for the
use of the common school of the district, upon the modern
and improved plan of constructing school-houses, and sup-
plied with appropriate furniture; and was thus built and
furnished by means of taxes levied upon the inhabitants of
the district, of which the petitioner was then one.

At a meeting of the district, duly warned and held on the
17th day of October, 1856, against the remonstrance and
vote of the petitioner, a vote was passed to have Sunday
schools and public meetings for the purposes of preaching
and other religious exercises held thereafter in the school-
house. And the committee of the district, in pursuance of
the vote, had since repeatedly permitted the school-house to
be used for Sunday schools, for meetings for religious wor-
ship and preaching, both on the Sabbath and on week day
evenings, and also for protracted religious meetings; and
declared their intention to continue to permit such use, though
requested by the petitioner not to do so; and the school dis-
trict, as a corporate body, still persisted in such use of the
school-house, against the remonstrances of the petitioner.

The house and furniture were thereby somewhat worn, and were liable to be destroyed somewhat sooner than they would have been had their use been confined to ordinary school purposes, and the petitioner was rendered liable to greater taxation for the maintenance and repair thereof, than he otherwise would have been. It was, however, shown that the petitioner sent no children to school, and that the assessments for ordinary school expenses had theretofore been levied upon persons sending children to school, and that the petitioner had not actually been subjected to any tax as an inhabitant of the district since the year 1854, when the tax was levied for the building and furnishing of the present school-house. And it was also shown that the injury occasioned to the school-house and furniture, by means of the Sunday schools and meetings for religious worship, was not very serious or considerable. On this point the court found, that though the injury was not very great, yet it was not merely nominal, but was such as would naturally arise to a school-house from holding crowded meetings for public religious worship therein.

It was also shown that, for forty or fifty years previous, it had been customary for the district to permit the school-house of the district to be used for Sunday schools, for religious meetings on week days and on Sundays, and for the purpose of debating, and that, until shortly before the bringing of the present suit, the petitioner and the other tax-payers and inhabitants of the district, had acquiesced in such use of the building; and that shortly after the construction of the present school-house, the petitioner presided in a debating society whose meetings were held in it, and drew up a set of rules relating to the manner in which the building should be occupied for other purposes than such as strictly related to common schools, which rules were adopted by the district, but had been repealed some year or more before the bringing of the suit; and that the petitioner, as committee of the district, and as its clerk, had consented to the use of the school-house for debating societies, and for religious exercises, though he had not done so since the repeal of the rules.

The court found that the meetings in the school-house for religious worship and for Sunday schools, which were complained of by the petitioner, were held at such times and in such manner as not to interfere with the free use of the school-house for school purposes, and that the school-house was open to the meetings of different denominations of christians, without discrimination or distinction of sects.

Upon these facts the case was reserved for the advice of this court.

*Ferry,* for the petitioner.

1. The statutes relating to school districts stand in the place of charters of the corporations created thereby. At common law no person could be made a member of a corporation aggregate without his own consent. Ang. & A., on Corp., § 81. *Ellis* ·v. *Marshall,* 2 Mass., 269. But these statutes create a class of involuntary corporators, and abridge their rights both as to persons and property. Pub. Acts 1856, pp. 46, 49, 58. So far as those rights are thus affected, these statutes therefore should be construed strictly, and, for the same reason and to the same extent, the general law of corporations should be rigidly enforced in its application to school districts.

2. The school-house, with its furniture and the land on which it stands, is corporate property, subject as to its use and management to the rules and restraints of the law of corporations. Fundamental among those rules and restraints is the following—that a corporation " possesses only those properties which the charter of its creation expressly confers upon it, or such as are incidental to its very existence ; being such as are best calculated to effect the object for which it is created." Marshall, C. J., in *Dartmouth College* v. *Woodward,* 4 Wheat., 636. The sole object for which school districts are created is education. The respondents have determined to apply the corporate property to the support of religion.

3. Where a corporation is about to exceed its powers, and apply the common property to objects beyond its authority,

a court of equity will grant relief by injunction, to a corporator who dissents from the action of the majority. *Stevens* v. *Rutland and Burlington R. R. Co.*, 29 Verm., 545. *Augar* v. *Regent's Canal Co.*, G. Coop. Eq. R., 77. *River Dam Navigation Co.* v. *North Midland R. R. Co.*, 10 Beav., 1. *Munt* v. *Shrewsbury and Chester R. R. Co.*, 3 Eng. L. & Eq., 144. *Hartford and New Haven R. R. Co.* v. *Croswell*, 5 Hill, 385. The above cases proceed in part upon the idea that the corporator is a *cestui qui trust*, the trust arising upon a contract between himself and the corporation. There is still greater necessity for the application of the remedy in favor of an involuntary corporator, who has been made a *cestui qui trust* without his consent, and whose interest in the trust estate—that is, the corporate property—is at the mercy of an irresponsible majority unless that remedy is applied. *Stevens* v. *Rutland and Burlington R. R. Co.*, supra. But the action of the majority in such cases is, moreover, treated in equity as a fraud upon the minority. Id. The circumstances that the plaintiff sent no children to school, that the use of the house for religious worship did not interfere with its use as a school-house, that the plaintiff assented to the use of the old building for religious meetings and to the original restricted use of the new one, make no difference. *Middlesex Turnpike Co.* v. *Swan*, 10 Mass., 384.

*Minor*, for the respondents.

1. The petitioner is not entitled to an injunction restraining the respondents from the use of their school-house for meetings for religious exercises and for Sunday schools; because, 1st. There is no statute law or constitutional provision forbidding such use. 2nd. Such use is sanctioned by the custom of the district for more than forty years. 3d. The school districts are the owners in fee simple of the land on which the school-house stands, and have the right to dispose of the same in any manner. 4th. Such use is no perversion of the corporate property from its proper and legitimate objects. 5th. On the contrary, the use of the school-house for religious meetings and Sunday schools, is carrying

out the great purposes of our constitution and statute law with reference to education. *Sheldon* v. *Centre School District*, 25 Conn., 224.

2. The petitioner, in his bill or otherwise, has not shown that he will certainly ever be taxed for repairs made necessary by the use of the school-house. All such repairs may be taxed upon the parents, guardians and employees of the children attending school. The petitioner has neither child, ward or apprentice. Pub. Acts 1858, p. 31. Again, the damage done to the school-house is almost if not entirely nominal. The liability for taxation is too remote for the interference of a court of equity. The granting of an injunction is a matter of discretion with the court and not of strict right in the petitioner, and in a case like this, where the possibility of injury to the petitioner is so slight, and where he stands alone against all the other inhabitants of the district, opposing his mere ill will to their convenience and really to their necessities, a court of chancery ought to regard his claim with no favor, and in the exercise of its discretion to refuse its equitable aid. Especially should it do so, in view of the fact that the petitioner himself has so long acquiesced in the use of the property of the district for such purposes.

HINMAN, J. The question for our decision in this case is probably of but little importance, either to the parties themselves or to the public. Such a question has never before arisen in Connecticut, for the reason, undoubtedly, that no individual tax-payer in a school district has considered his pecuniary interest in the school-house as sufficiently affected by the practice, which to some extent is said to prevail, of holding religious meetings in school-houses, to induce him to institute proceedings to prevent it. And there are probably but few districts in the state which would suffer such a practice to continue, if it was very strenuously objected to by any of the inhabitants of the district. Indeed, the interests of school districts, and of their inhabitants severally, in respect to the use which shall be made of the school-houses, are identical—all being alike interested to preserve their school-

houses for their appropriate use as such exclusively. Such a question, therefore, is probably no more likely hereafter to arise than has been the case heretofore. In the aspect in which the question is presented in this case, it seems hardly possible for it frequently to arise. No school district would undertake, by a direct vote, to tax its inhabitants to build a church, nor would it devote its school-house to the general purposes of a church edifice, to the prejudice of its more appropriate use as a school-house; and the occasional use of it, for the purpose of holding religious or other meetings, would not involve any question of right, and probably would not amount to such irreparable injury as to call for or justify the interposition of a court of equity to prevent it. In this case, the only doubt any of us have entertained in respect to the decision, has been, whether such facts were presented as to involve and call for a decision upon the strict question of right between the parties, because it has not been and can not be contended, that a school district has any more right to build a church, or to appropriate and devote its buildings erected for school purposes to any other use, so long as they remain school-houses, than a city or borough has to expend money belonging to the corporation in celebrating the great national anniversary, or a railroad company has to extend its road beyond its chartered limits, or to establish steamboats or stages in connexion with it. *Hood* v. *New York and New Haven R. R. Co.,* 22 Conn., 512. *New London* v. *Brainard,* id., 552. *Sheldon* v. *Center School District,* 25 id., 224. *Hodges* v. *Buffalo,* 2 Denio., 110. *Hartford and New Haven R. R. Co.* v. *Croswell,* 5 Hill, 383. *Stephens* v. *Rutland and Burlington R. R. Co.,* 29 Verm., 545.

The principle which runs through the cases is, that corporations have only such powers as are within the scope of their charters; and where they are wasting or misappropriating the corporate property or funds, courts of equity treat them as trustees of the property for the benefit of the individual corporators; and on this ground, as well as on the ground that such misappropriation of the property is a fraud upon the rights and interests of the corporators individually, they interfere by

injunction to restrain and prevent any such wasting or destruction of the corporate property. And it makes no difference whether the corporation is a joint stock manufacturing or trading corporation, as in the case of *Sears* v. *Hotchkiss*, 25 Conn., 171, or a municipal or territorial corporation, as in the case of *Brainard* v. *New London*, or is of the character of this school district.

With us, school districts exist under general laws, which, for educational purposes, constitute them corporations ; and as such they have power to build and own school-houses, and to tax their inhabitants therefor. Of course the tax-payers must have the same or a similar interest in these buildings that the tax-payers in towns or cities have in the property of those communities; and as it has been held that a court of equity will protect such interests in the property of cities and towns, it follows that the same principle will protect the interests of tax-payers in the property of school districts.

When we come, then, to the peculiar circumstances of this case, it is worthy of consideration, that the process of injunction is the only remedy at all applicable to the facts of the case. As the plaintiff can not sue the district at law for any injury to the building, his interest in it can only be protected by this or some similar proceeding. To deny him this remedy, therefore, in a case where his rights have been and are still threatened to be disregarded and invaded, seems to amount to a denial of any remedy for an admitted and acknowledged infringement upon his rights. This is as much opposed to the dictates of natural equity and justice, as it is to the principle that the law will always furnish a remedy for every invasion of another's rights. As already intimated, this is not the case of a casual or even occasional use of the building for the purpose of holding religious meetings therein. The district, at a regular meeting duly warned, voted, not merely to have public meetings for preaching and other religious exercises held at the school-house, but that they would have Sunday schools there also. We lay no other stress upon the vote that they have Sunday schools there,

than that it indicates, more clearly, a definite and fixed determination to dedicate the building to religious as well as to school purposes. Perhaps the district might establish a Sunday school under its supervision, and that of the school visitors, so connected with educational purposes as to come within the objects and general purposes for which such buildings are erected. But there is no pretense that a school of that character was intended. On the contrary an ordinary Sunday school was, as we suppose, intended,—one wholly devoted to religious instruction, and connected with some one or more of the religious societies which met there statedly for religious worship. Now, however beneficial and important such instruction may be, and however desirous we may individually be to promote it, it can not be denied that such a school, under the supervision and entire control of the religious teachers of an ecclesiastical society, is an entirely different institution from our statutory common schools. If it can be sanctioned in one district, it obviously can in any and all of them, where a vote can be obtained for the purpose; and if it can thus be established, then it follows that it can be done in favor of any denomination of christians who apply for it and are able to obtain a majority of the legal voters of the district in their favor; and thus a fruitful source of bitter controversy would at once be introduced into school districts, well calculated to hinder, rather than to promote, either religion or learning. The fact then, that the Sunday school met at this place, that they had regular religious meetings there on Sundays, as well as on other days, particularly evening meetings and protracted meetings, indicates that it was the object of the vote passed by the district, to devote the building to the ordinary purposes of a church, as well as to the purposes of a school-house. It is true that the meetings were conducted without doing much injury to the building or its furniture, still, the finding is that the injury was such as naturally arises by reason of holding crowded meetings for public worship therein. And as these meetings were held on all the days of the week, as well as on Sundays and in the evenings, it is quite obvious that more or less in-

jury must arise, not merely from the use of the building and its furniture, but from deranging the furniture, books and stationery belonging to the school, and by materially increasing the risk of destroying the house by fire, which last is, without doubt, a more serious pecuniary injury than any other which has been named. While then the injury heretofore may not have been very serious, it clearly, in the language of the finding, " is not merely nominal," but has, heretofore even, been a substantial injury, and, considering the risk to which we have alluded, it certainly amounts to an injury of no trifling character.

But the value of the right of the district and of its inhabitants to the exclusive use of the school-house for school purposes, can not be measured by the mere pecuniary injury resulting from an infringement of the right. It is more correct to estimate it by the value of the building, if it was to be rented for the purposes for which it has been used gratuitously. The district is under no more obligation to furnish a public hall for such purposes as may be useful or beneficial to the community than any private individual. And we know of no principle that will justify the misappropriation of trust property for any purpose whatever.

There is no custom found which gives a right to use the school-house for the purposes complained of. The custom of permitting the former school-house to be used for religious meetings and the meetings of debating societies, even if it gave any right to the continued use of that building for those purposes, does not apply to the new one, which has been too recently built to be the subject of any rights acquired by user. Besides, the custom itself is so indefinite and uncertain as probably to lay no foundation for the acquisition of a right, irrespective of the fact that, such as it was, it was exercised under the license and permission of the district, rather than under a claim of right. The fact that the building was open to the meetings of all denominations of christians, without discrimination, or distinction of sects, while more calculated to interrupt the proper use of it as a school-house, is too unimportant a circumstance to have any bearing against the

right of the inhabitants to have the building exclusively appropriated to school purposes.

Upon the whole case therefore, the court is of opinion that the petitioner has such an interest in the school-house as entitles him to the process of the court for its preservation ; and that the uses contemplated by the vote of the district, and heretofore practiced and threatened to be continued, are such as he has a right to object to and prevent. The temporary injunction issued in the case, the superior court is therefore advised to make perpetual.

In this opinion Storrs, C. J. and Park, J., concurred.

ELLSWORTH, J. A majority of the court advise that the school district be restrained from using their school-house for occasional worship and the religious instruction of their children on the Sabbath, not because it is found, or is true in fact, that such use has heretofore interrupted or hindered the week day school, or is likely to do it in time to come, but because the petitioner has a latent fear, that at some future time he may be taxed for repairs. As this is an application to the discretion of a court of equity for summary relief by injunction, it has seemed to me, that the petitioner is called upon to make out a case of necessity and irreparable injury, and that in this he has entirely failed. I should prefer to advise the dismissal of the petition, for it appears to me to be a vexatious proceeding, and nothing less than an ill-natured attempt to disoblige the owners of the school-house, (all of whom, except the petitioner, concur in this use,) by preventing an enjoyment by them of the property of the district, which is reasonable in itself and does it no real appreciable injury.

I do not intend to go into an elaborate argument on the subject. The case does not call for it, for its real character is most apparent upon the facts found by the court below. It is, as already intimated, an unworthy attempt of Mr. Scofield, a single member of the district, on the merest technical notion of a common ownership in the school-house, to close

its doors, lest this incidental use of the building may expose him to the risk of enhanced taxation.

I had intended to be satisfied with merely expressing a dissent to the opinion of the majority, but on conferring with Judge Sanford, we have thought it best to present, in the briefest manner possible, the views which have brought us to a different conclusion from our associates.

It appears that the present and former school-houses of the district, for more than a half century, have, as is usual in the country, been used occasionally by the members of the district for christian worship, and of late years for Sabbath schools. This practice they wish to continue. They insist that they are virtually the proprietors, and ought to know, and can best judge, how and when the building, not otherwise wanted, can be occupied for the religious instruction of children or adults, or for devotional purposes, without in-croaching on any one's rights, or endangering the building; and the court find that in fact "the injury to the school-house is not serious or considerable," that is, it is inconsid-erable and inappreciable.

Why now, I ask, may not these people be left to enjoy this incidental advantage of what is their own, subject of course to the vote of the district? Why not let them promote the happiness of their families and the religious training of their children as they judge wise and best? And on what princi-ple is it that our discretionary aid is supplicated, or the in-terposition of a grave court of justice invoked, to arrest these proceedings and close the building against them by an injunction? Certainly the petitioner is not appreciably injured; nor does he, if that be important, make any use of the district school; nor has he been taxed for its support, nor for the repair of the building. These expenses are otherwise provided for, and he stands here, an isolated individual, influ-enced by no commendable motive, warring against the peace, harmony and prosperity of the district, and calls upon us to render him assistance. My judgment is against giving it, and if my discretion may be the rule and measure of my duty, it will continue so until he can present a better case.

It has been said, since a school district can not lay a tax to build a house designed expressly for religious worship, it can not legally make use of a school-house for that purpose when erected, though such use is only occasional and incidental; and so far is the doctrine carried, and consistently too I think by the petitioner's counsel when once admitted, that a district school-house, it is claimed, may not be put to any use, other than the keeping of a district school organized under the statute law of the state, thus excluding many summer schools, and all such as are not sustained by the public money. Were this true, it would not follow that the peculiar remedy sought for here is demandable of right; but it is not true. There is a manifest distinction between a district laying a tax to build a church edifice, and occasionally using a school-house for an evening meeting for religious edification or instruction in sacred music. The latter is merely incidental to the main use of the building, but the former is a positive act, without law and against law. Let me inquire if school-houses, churches and other public buildings, erected by taxation allowed for that definite purpose, can not be used in any instance for any other purpose than the main one for which they were erected. I do not mean chiefly, but incidentally? Why, the contrary is the universal practice, and the universal belief. Nor are the incidental uses always as nearly related to the main purpose for which the building was erected, as are religious worship and religious instruction to the proper and legal uses of a school-house. The city of Hartford can not tax the citizens to build a hall for dancing, or musical exhibitions, or for agricultural fairs, but yet the great hall in the market house is put to these uses day after day and night after night, and no one has thought it wrong, or that an injunction could be obtained to arrest the practice. Such latitude must be allowed, and in the country it is doubly necessary, if the people are to assemble in masses at all. Were it otherwise, a single man in the district could prevent a meeting of farmers in the school-house to consult for the prosperity of agriculture or the general interests of their town; or of benevo-

lent women to see how they can advance the charitable interests and projects of the day; or of the youth of the district for instruction in sacred music; or a meeting to consult how the people can best receive, with demonstrations of respect, the Chief Magistrate of the country, about to pass through their town; and, in short, any and all assemblies of the inhabitants of the district not strictly denominated school meetings. Such and kindred uses of a school-house, I hold to be unobjectionable and commendable, provided they do not interfere with the convenience of the school, nor in any serious degree injure the building of the district. Such a practice, so long and so extensively adopted and enjoyed by the people of the state, will be abandoned with extreme reluctance; and we may find, after all, that public necessity and public sentiment will, by their moral influence, be likely to secure to the people what is so necessary and reasonable, notwithstanding this judicial decision.

In this opinion Sanford, J., concurred.

Advice that injunction be granted.