15  259
d68 802

JOHN G. SPENCER v. JOINT SCHOOL DISTRICT NO. 6, &c.

1. INJUNCTION; *Interest of Plaintiff Sufficient to Maintain Action.* A party seeking to restrain an alleged misuse of the school-house belonging to a school-district, who alleges that he is a taxpayer and resident of the district, that the school-house has been built partially out of the taxes that he has paid, that he has children attending school in said school-house, and that by the misuse complained of the books of his children are "torn, soiled, carried away, lost and misplaced, their copy-books written on, or thrown to the floor, their slates and pens broken, their inkstands upset, and their paper wasted and destroyed," shows such a personal and private interest as entitles him to prosecute the action.

2. SCHOOL-HOUSE; *Misuse may be Restrained.* The use of a public school-house for any private purpose, such as the holding of religious or political meetings, social gatherings and the like, is unauthorized by law, and may be restrained at the instance of any party injured thereby, and this though a majority of the electors and taxpayers of the district assent to such use and an adequate rent is paid therefor.

*Error from Nemaha District Court.*

INJUNCTION, brought by *Spencer*, as plaintiff, against *Joint School District No. 6, of Nemaha and Brown Counties*, as defendant, to restrain the use of the district school-house for other than school purposes. The defendant demurred, "for the petition does not state facts sufficient to constitute a cause of action." The district court, at the April Term 1874, sustained said demurrer, dismissed the petition, and gave judgment in favor of the defendant for costs. The plaintiff brings the case here.

*Johnson & Fulloon*, for plaintiff..

*N. Price*, and *J. E. Taylor*, for defendant.

The opinion of the court was delivered by

BREWER, J.: This was an action brought to restrain the defendant from leasing its school-building for other than school purposes. Two questions are raised. First, does the plaintiff show such a peculiar and personal interest as will enable him to maintain the action? and second, do the facts alleged disclose grounds for the relief sought? ° The plaintiff alleges that "he is a resident of the school-district, and taxpayer therein, and as such taxpayer has contributed his 1. Interest suffi- proportion of taxes for the building of the said cient to main- tain injunction. school-house; that his children attend school therein, and that by the improper uses of the building complained of, the books of his children are torn, soiled, carried away, lost and misplaced; their copy-books written on, or thrown to the floor; their slates and pens broken; their inkstands upset, and their paper wasted and destroyed." We think this shows such an interest as entitles him to a hearing upon the question of the alleged misuser of the school-house. When he pays his taxes, he passes over so much money into the public fund, and the disposition of it is a public duty intrusted to certain public agents; and the fact that he has contributed by the payment of taxes to the creation of this

public fund, does not give him a right to challenge the manner of its use. *Craft v. Jackson Co.*, 5 Kas. 518. He is but one of many contributors to the same fund. He has no personal interest in it. But here he shows that his own private property suffers from the alleged wrongdoings. The school books, etc., which he purchases for his children's use are his individual property. They belong in no sense to the public, and though they may be but a few dollars in value he is entitled to have those few dollars protected as fully as though thousands of dollars were in danger.

As misuser, he alleges that the "school-house is, by the order of the directors, leased and let to divers societies, meetings, and gatherings," and that thereby large assemblages of persons, both children and adults, gather there, crowding the seats and desks; that these assemblages consume the fuel purchased with the public funds, tear the desks from their fastenings, and cut, scratch and deface them; that some of these meetings are in the night-time, and that at such meetings kerosene or coal oil is used, which is in violation of the terms of the insurance policy on the building, the premium of which has been paid out of the public funds; and that to accommodate one of these societies the building has been altered by erecting platforms, rostrums, closets, boxes, etc. In short, he alleges that this building, erected by public funds for the purpose of a school-house, is, by the order of the directors, used for a variety of purposes and gatherings wholly alien to schools and educational matters. It does not appear that this is done against the wishes or without the consent of a majority of the taxpayers and electors of the district, nor that the building is leased without receiving adequate rent. Indeed, the question as it comes before us, may fairly be thus stated: May the majority of the taxpayers and electors in a school-district, for other than school purposes use or permit the use of the school-house built with funds raised by taxation? The question is one which in view of the times, and the attacks made in so many places, and from so many directions, upon our

*3. Misuse of school-house; may be restrained.*

public-school system, justifies, as it has received at our hands, most serious consideration. We are fully aware of the fact, that all over the state the school-house is, by general consent, or at least without active opposition, used for a variety of purposes other than the holding of public schools. Sabbath schools of separate religious denominations, church assemblies, sometimes political meetings, social gatherings, etc., are held there. Now none of these can be strictly considered among the purposes for which a public building can be erected, or taxation employed. But it often happens, particularly in our newer settlements, that there is no other public building than the school-house—no place so convenient as that. The use for these purposes works little damage. It is used by the inhabitants of the district whose money has built it, and used for their profit or pleasure. Shall it be said that this is illegal? Doubtless, if all in the district are content, no question will ever be raised; and on the other hand if a majority object, the use for such purposes will cease. It is only when the majority favor, and a minority object, that the courts are appealed to. That minority may be but a single individual, may be influenced by spite, or revenge, or any other unworthy motive; but whatever the motives which prompt the litigation, the decision must be in harmony with the absolute right of all. It seems to us that upon well-settled principles the question must be answered in the negative. The public school-house cannot be used for any private purposes. The argument is a short one. Taxation is invoked to raise funds to erect the building; but taxation is illegitimate to provide for any private purpose. Taxation will not lie to raise funds to build a place for a religious society, a political society, or a social club. What cannot be done directly, cannot be done indirectly. As you may not levy taxes to build a church, no more may you levy taxes to build a school-house and then lease it for a church. Nor is it an answer to say that its use for school purposes is not interfered with, and that the use for the other purposes works little, perhaps no immediately-perceptible injury to the building, and results in the receipt

of immediate pecuniary benefit. The extent of the injury or benefit is something into which courts will not inquire. The character of the use, is the only legitimate question. A municipal bond of five cents, in aid of a purely private purpose, is as void as one of a thousand dollars, and that too though the actual benefit to the municipality far exceeds the amount of the bond. The use of a public school-house for a single religious or political gathering, is, legally, as unauthorized as its constant use therefor. True, a court of equity would not interfere by injunction after a single use, and where there was no likelihood of a repetition of the wrong, for it is only apprehended wrongs that equity will enjoin. Here the unauthorized use is charged as a frequent fact, and one likely to occur hereafter. It is unnecessary to pursue this discussion further, for it would be simply traveling over a road already well worn and dusty. Besides the authorities with which every lawyer is familiar, upon the power to use public funds or property for private purposes, we refer to the following as bearing upon the special phase of the question before us: *Scofield v. Eighth Sch. Dist.*, 27 Conn. 499; *School District No. 8 v. Arnold*, 21 Wis. 657.

The judgment of the district court will be reversed, and the case remanded for further proceedings in accordance with the views herein expressed.

All the Justices concurring.