DAVENPORT v. BUFFINGTON et al.

(Circuit Court of Appeals, Eighth Circuit. October 16, 1899.)

No. 1,177.

1. MUNICIPAL CORPORATIONS—PUBLIC PARKS—RIGHTS OF TAXPAYER IN.
  A resident and taxpayer of a city or town may maintain a suit in equity to prevent the diversion to private use by the original proprietor of the town site of land which, when the town was laid out and platted, was dedicated as a public park, and has since been maintained as such.

2. DEDICATION—STATE AS DEDICATOR—POWER OF REVOCATION.
  A nation, state, or municipality, which dedicates land within a town site, of which it is owner, to public use for park purposes, is as conclusively estopped as a private proprietor from revoking such dedication, from selling the park, and from appropriating the land which it occupies to other purposes, after lots have been sold, the town settled, and after the park has been improved with money raised by taxation of its residents and taxpayers in reliance upon the grant and covenant which the dedication evidences.

Appeal from the United States Court of Appeals in the Indian Territory.

This is an appeal from a decree of the United States court of appeals in the Indian Territory, which affirmed a decree of the trial court overruling a demurrer to the complaint, and granting a perpetual injunction against the appropriation of the public parks of Vinita, in the Indian Territory, to private use. This was the case which the appellees presented by their bill: The Cherokee Nation, by a legislative enactment passed on December 14, 1871, reserved a tract of land one mile square at every railroad station upon its lands, and authorized its principal chief to appoint commissioners to locate, survey, and sell the same as sites for towns. These commissioners located, surveyed, and platted a tract of land one mile square as the town of Downingville, where Vinita now stands. By their plat they divided this land into lots, blocks, parks, streets, alleys, and right of way of the railroad company. Then they advertised for sale, and on October 13, 1871, sold, the lots and blocks according to this plat. After completing this sale they filed their plat and their report of the sale, and this plat and sale were duly approved by the national council of the Cherokee Nation. After all this had been done, and in the year 1873, the national council created the mayor and town council of Downingville a municipal corporation, and that corporation took, and has

ever since retained, the possession, care, and control of the streets, alleys, and public parks of Downingville under this act of incorporation. It has taxed the property of the residents of that town to raise money to improve these parks, and it has expended money upon them for that purpose. After the mayor and town council of Downingville had held possession and control of these parks for 23 years, and had expended some money upon them in improvements, and on December 4, 1896, the national council of the Cherokee Nation passed a legislative act which authorized the town commissioners of that nation to survey and plat these parks into lots, and to sell them. The judge of the circuit court of Cooweescoowee district enjoined T. A. Chandler, town commissioner, from surveying and selling these parks under this act, but this commissioner proceeded to sell the lots in the park, as though no injunction had been issued against him, in contempt of the circuit court of Cooweescoowee district. The appellant, James S. Davenport, bought one of these lots, and fenced it for the purpose of building a residence upon it. None of the money realized from the sale of these lots in the parks has been paid to, and none of it inures to the benefit of, the mayor and town council of Downingville, under the act authorizing their sale. The appellee T. M. Buffington is the mayor of Downingville. The appellees J. C. Gray and T. F. Thompson are citizens of the Cherokee Nation, who own lots fronting the park in which the lot purchased by Davenport is situated, and they bought their lots before the national council passed the act of December 4, 1896. The appellee W. H. Tarrant is a resident and taxpayer of the corporate town of Downingville, and a citizen of the United States. These appellees averred that the sale of this park by the town commissioners was illegal, that the appellant thereby obtained no legal right or title to the lot which he purchased and fenced, that the sale and the act of the appellant in fencing this lot constituted a violation of the dedication of the parks to public use and of the rights of the appellees, and entailed much damage upon each of them, and they prayed for and obtained an injunction which prohibited the appellant from constructing a residence on the lot in the park which he had bought, and commanded him to remove the fence which he had built upon it. The grounds of the demurrer to the complaint which stated these facts were that there was a defect of parties plaintiff, and that the facts stated in the complaint constituted no cause of action. The courts below overruled this demurrer, and issued a perpetual injunction.

G. B. Denison and William T. Hutchings, for appellant.
Preston S. Davis, for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges

SANBORN, Circuit Judge (after stating the facts as above). When this suit was commenced the tribal courts of the Cherokee Nation had exclusive jurisdiction of all cases arising in the Cherokee country in which members of that tribe by nativity or adoption were the only parties, while the United States court in the Indian Territory had jurisdiction of every civil case arising between a citizen of the United States and any citizen or person residing in the Indian Territory. 25 Stat. 784, c. 333, § 6; 26 Stat. 94, 96, c. 182, §§ 29, 31; Raymond v. Raymond, 28 C. C. A. 38, 83 Fed. 721, 723. All the parties to this suit except Tarrant were members of the Cherokee Nation. If Tarrant had no cause of action against the appellant, then he was not a proper party to this suit, and the United States court was without jurisdiction of it. The defect of parties plaintiff which the appellant urges upon our consideration is that Tarrant was a mere general taxpayer and resident of Downingville, that he had no interest in the preservation of its parks different from or other than that possessed by every other resident taxpayer, and that this was insuffi-

cient to enable him to maintain a suit for this injunction. If, however, these parks were dedicated to the public by the Cherokee Nation, as this taxpayer claims, that dedication was made more than 25 years ago, and the town of Downingville has been settled, the lots in it have been sold, and its inhabitants have established their homes there, and have become the taxpayers of the town in reliance upon that dedication. After all this has been done, the nation sells the parks, and its vendee enters upon a portion of one of them, and is about to appropriate it to his private use, and to make it the site for his residence. Has a resident and taxpayer of the municipality no remedy for such a wrong? May the parks which he and his fellow citizens have paid to improve be sold and appropriated to the use of the nation, or of strangers, while he stands by remediless? Has he no interest in the right of the public to the free use of these commons sufficient to enable him to maintain a suit in equity to prevent the destruction of his right to use them, the spoliation of the parks, and their appropriation to private use? Let us see. The title to the land in these parks, subject to the right of the inhabitants and taxpayers of the town to use it forever for park purposes, is without value. It is nothing but a naked legal title held in trust for the people who use, or have the right to use, the parks. The real value of the land in the parks is the value of the right to use it, and when the nation sells the parks it derives its purchase price, in fact, not from the sale of the title to the land, but from the sale or the destruction of the right of the people to use that land for park purposes. Thus, by the sale of the parks, the resident taxpayer, Tarrant, is deprived of his share in the valuable right to use them. This is not the only injury entailed upon him by this sale. Parks are, if not necessary, at least customary, possessions of towns and cities; and, if the parks of Downingville are sold and appropriated to private use, the strong probability is that the town will purchase more land, establish other parks upon it in lieu of those destroyed, and thus increase the burden of the appellee's taxation. Again, Tarrant alleges that he has a wife and four children, and that he expects to make Downingville his home, and to raise and educate his children there. If these parks are appropriated to private use, he and his family will be deprived of their use to promote their health, recreation, and amusement. In short, the sale of the parks, and their use by the vendees for their private purposes, will deprive the appellee Tarrant of his share in the valuable right of the people to use them for park purposes, will deprive him and his family of a source of health, recreation, and amusement, and will be very likely to increase the burden of his taxation by compelling him to pay a part of the purchase price of other parks bought to replace those destroyed. Now, the enforcement of trusts is one of the great heads of equity jurisdiction. The land in these parks, if it was really dedicated to the use of the public for park purposes, is held in trust for that use, and courts of equity always interfere at the suit of a cestui que trust or a cestui que use to prohibit a violation of the trust, or a destruction of the right of user. The appellee Tarrant is one of the cestuis que use for whom these parks are held in trust, and the inevitable conclusion is that his

interest in them is ample to enable him to maintain a suit in equity to prevent their diversion to private uses. Thus, in Scofield v. School Dist., 27 Conn. 499, it was held that a resident and taxpayer of the district had sufficient interest to enable him to maintain an injunction to prevent the use of the school house for religious services. The court very pertinently said that the value of the right of the district and its inhabitants to the exclusive use of the school house for school purposes was not to be measured by the mere pecuniary injury resulting from an infringement of the right. To the same effect is the decision of the supreme court of Kansas in Spencer v. School Dist., 15 Kan. 259, in which the opinion was delivered by Judge Brewer. Indeed, under the modern decisions, the general rule is that a resident taxpayer of a municipality has sufficient interest, and has the right to maintain a bill to prevent the unlawful disposition of the money or property of his town or city, to forbid the illegal creation of a debt or liability of his municipality, and to restrain the diversion of money or property in his town or city from any public use in which he shares to which it has been dedicated. Crampton v. Zabriskie, 101 U. S. 601, 609; Mayor, etc., v. Gill, 31 Md. 375, 395; Spencer v. School Dist., 15 Kan. 259; Scofield v. School Dist., 27 Conn. 499; Christopher v. Mayor, etc., 13 Barb. 567, 571; Stuyvesant v. Pearsall, 15 Barb. 244; De Baun v. Mayor, etc., 16 Barb. 392; Sharpless v. Mayor, etc., 21 Pa. St. 147, 158; Moers v. City of Reading, Id. 188; City of New London v. Brainard, 22 Conn. 552; Merrill v. Plainfield, 45 N. H. 126.

The suggestion is made in the brief of the appellant that the only citizens of the United States who could lawfully reside in the Cherokee Nation were school teachers, army officers, and licensed traders, and that, consequently, the appellee Tarrant could not have been a lawful resident and taxpayer of Downingville. But there is no presumption that Tarrant was not a school teacher, or an army officer, or a trader, and the demurrer admits that he was a resident and taxpayer of the town. This was an admission that he was a lawful resident, and the payer of a legal tax, and the suggestion in this regard is unworthy of consideration.

The second proposition of counsel for the appellant is that the complaint states no cause of action, because the Cherokee Nation had the right to revoke in 1896 the dedication which it made in 1871, and to sell the land dedicated to public parks free from the trust with which it was impressed. The designation of this land as parks or commons on the plat of the town of Downingville, which was accepted and approved by the nation in 1871, was, in legal effect, a grant of the land for the exclusive use of the public for park purposes, and a warranty on the part of the nation, which owned it, that it would never claim or use it for any other purpose. The purchase of lots in accordance with this plat by the inhabitants and taxpayers of Downingville, and their imposition upon themselves and their expenditure of taxes to care for and improve the parks was an acceptance of this grant and covenant. Bell v. Railroad Co., 63 Fed. 417, 419, 11 C. C. A. 271, 272, and 27 U. S. App. 305, 308; Beatty v. Kurtz, 2 Pet. 565, 583; City of Jacksonville v. Jacksonville Ry. Co.,

67 Ill. 540, 542; Le Clerq v. Trustees of Gallipolis, 7 Ohio, 218, 221, pt. 1; Village of Princeville v. Auten, 77 Ill. 325, 330; Brown v. Manning, 6 Ohio, 298. After the mayor and town council of the town of Downingville was incorporated by the Cherokee Nation, and after it took possession and control of these parks, this grant and acceptance became a threefold contract. · It was an agreement between the nation and the public,—the people for whose use the title of the parks was held,—an agreement between the mayor and the town council of the town of Downingville and these people, and an agreement between the nation and the municipality; and all parties to this agreement were equally bound to hold and keep the land embraced within these parks sacred to the exclusive use of the public for park purposes. It is not claimed that a private proprietor, who had platted and dedicated land for a park in this way, could lawfully revoke that dedication, and sell the park for private use, after lots had been bought, and the park had been improved in reliance upon the plat. The contention is that the Cherokee Nation was a trustee for and represented the public, and that its sale of the parks was a lawful release of the right of the public to use them as such by their legal trustee and representative. In support of this view counsel for the appellant cites Clarke v. City of Providence (R. I.) 15 Atl. 765, 766, and Commissioners v. Armstrong, 45 N. Y. 234. In these cases, however, the state simply authorized the municipalities to appropriate the parks within their limits to other uses. The state did not assume in either case to appropriate a park to its own use, or to sell it for its own benefit, as the Cherokee Nation does in the case at bar; so that these decisions do not rule this case. Moreover, the nation, in the case in hand, is the grantor and covenantor, and upon indisputable principles it cannot be at the same time the grantee and the covenantee, or the agent of such grantee and covenantee, to release to itself the grant and covenant which it has made. McKinley v. Williams, 74 Fed. 94, 95, 20 C. C. A. 312, 313, and 36 U. S. App. 749, 752, and cases there cited. Besides, we are unwilling to concede that a nation or a state which becomes the proprietor of a town site, plats it, and dedicates its streets and parks to public use, has any greater or better right to revoke or avoid its grant or covenant than a private proprietor would have. It may be that either, before any rights have accrued, can revoke the dedication, but, after lots have been sold, after streets have been graded, after parks have been cared for and improved according to the plat,—in other words, after rights have vested in reliance upon the dedication,—we deny the right of nation or of individual to revoke it, or to release or destroy the right of the public to the exclusive use of the parks and streets for the purposes for which they were granted. Nations, states, and municipalities have and exercise two classes of powers,—one governmental, by which they rule their people; the other proprietary or business, by which they carry on their business affairs as legal personalities. The same fundamental principles of justice, of law, and of equity govern them in the exercise of their powers of the latter class which control the acts of private individuals. Illinois Trust & Savings Bank v. City of Arkansas City, 76 Fed. 271, 282, 22 C. C. A. 171, 182,

and 40 U. S. App. 257, 277 and cases there cited; U. S. v. Northern Pac. R. Co. (C. C. A.) 95 Fed. 864, 880. When the Cherokee Nation platted the town of Downingville, and when it undertook to revoke the dedication which that plat evidenced, it was not exercising its governmental, but its proprietary or business, powers, and it was subject to the same principles of law and of equity, and to the same rules of estoppel, that would have governed a private proprietor under like circumstances. A nation, state, or municipality which dedicates land that it owns in the site of a town to public use for the purpose of a park is as conclusively estopped as a private proprietor from revoking that dedication, from selling the park, and from appropriating the land which it occupies to other purposes after lots have been sold, after the town has been settled, and after the park has been improved with moneys raised by the taxation of its residents and taxpayers in reliance upon the grant and covenant which the dedication evidences. Monongahela Nav. Co. v. U. S., 148 U. S. 312, 341, 13 Sup. Ct. 622; Rutherford v. Taylor, 38 Mo. 315, 319; Warren v. Mayor, etc., 22 Iowa, 351; Ransom v. Boal, 29 Iowa, 69; Price v. Thompson, 48 Mo. 361, 365; Commissioners v. Lathrop, 9 Kan. 453, 463; McCollough v. Board, 51 Cal. 418; Harris Co. v. Taylor, 58 Tex. 690, 695. As the Cherokee Nation had no right to take possession of or to occupy the parks in the town of Downingville for the construction of residences in the year 1896, the appellant, Davenport, acquired no such right by his purchase from that nation, and the injunction was rightfully granted. The decrees of the United States court of appeals in the Indian Territory and of the United States court for the Northern district of the Indian Territory are affirmed.