Anne ARCHBOLD, Plaintiff,
Charles C. Glover, Jr., Intervenor Plaintiff,

v.

Robert E. McLAUGHLIN, Commissioner of the District of Columbia, et al., Defendants.

Civ. A. No. 2021–59.

United States District Court District of Columbia.
Jan. 27, 1960.

Hugh H. Obear, Edmund D. Campbell, Ronald E. Madsen, Douglas, Obear & Campbell, Washington, D. C., for plaintiff Anne Archbold.

Hugh H. Obear, Edmund D. Campbell and Charles C. Glover III, Washington, D. C., for Charles C. Glover, Jr., intervening plaintiff.

Chester H. Gray, Corp. Counsel, George C. Updegraff, John A. Earnest, and George H. Clark, Asst. Corp. Counsel, District of Columbia, Washington, D. C., for defendant Commissioners of the District of Columbia.

Oliver Gasch, U. S. Atty., Edward P. Troxell, Principal Asst. U. S. Atty., John F. Doyle, Asst. U. S. Atty., and Ellen Lee Park, Asst. U. S. Atty., Washington,

D. C., for defendants Fred A. Seaton and Conrad L. Wirth.

Harold Leventhal, Washington, D. C., for proposed intervenors, Audubon Society of the District of Columbia, Inc., Committee of 100 on the Federal City, Cecil J. Wilkinson and Nell Wilkinson, his wife, and Harold Leventhal and Kathryn K. Leventhal, his wife, individually, and on behalf of all others similarly situated, including West Glover-Archbold Citizens Association.

Smith W. Brookhart, Brookhart, Becker & Dorsey, Washington, D. C., for the National Parks Assn., a District of Columbia Corp., amici curiae.

MATTHEWS, District Judge.

Five motions are before the court. Before discussing them, the nature of this action will be briefly stated. Plaintiff, Anne Archbold, seeks to enjoin the construction of a multiple lane highway upon land she dedicated to the United States for use as a public park and to obtain a declaratory judgment in respect of that land. Charles C. Glover, Jr., as an intervenor plaintiff seeks similar relief as to adjoining land which was dedicated to the District of Columbia for use as a public park and children's playground by his father who is now deceased. The defendants are the Commissioners of the District of Columbia, members of the National Capital Planning Commission, Fred A. Seaton, Secretary of the Interior, and Conrad L. Wirth, Director of National Park Service.

### The Motions before the Court

The defendant Commissioners of the District of Columbia have filed two motions to dismiss or in the alternative for summary judgment, one as to Mrs. Archbold's complaint and one as to Mr. Glover's intervening complaint. The other defendants have filed a motion seeking similar relief as to both complaints. Plaintiffs have moved to drop certain defendants and for leave to file an amended complaint. A motion to intervene as plaintiffs has been made on be-

half of: Audubon Society of the District of Columbia, Inc., Committee of 100 on the Federal City, Harold Leventhal and Kathryn K. Leventhal, his wife, and Cecil J. Wilkinson and Nell Wilkinson, his wife, individually and on behalf of all others similarly situated, including West Glover-Archbold Citizens Association.

### The Motion of the Plaintiffs

Consideration will first be given to the plaintiffs' motion for leave to amend and to drop certain defendants.

After the filing of this action on July 25, 1959 plaintiffs utilized available procedures for discovery. In the light thereof they now assert that the parties they propose to drop are unnecessary to this action, these being the defendants sued as members of the National Capital Planning Commission. They further say that the proposed amended complaint will more appropriately state their claims against the remaining defendants—the three Commissioners of the District of Columbia, Mr. Seaton and Mr. Wirth.

Rule 15(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that leave to amend "shall be freely given when justice so requires." The primary consideration in determining whether to grant or deny an application for leave to amend is whether the allowance thereof will work an injustice to any of the parties, and the practice is to permit amendments freely to cure defective or imperfect pleadings, particularly to remedy objections raised on motions to dismiss. Barron and Holtzoff, Federal Practice and Procedure, Vol. 1, Sec. 447, pp. 893, 898.

It is the view of the court that the granting of the application to amend and to drop certain defendants would not result in an injustice to any party.

### The Motions to Dismiss

In support of their motions to dismiss or for summary judgment the defendants contend that no actual controversy exists between them and the plaintiffs. They claim that not even the preliminary plans for the location of the proposed highway

have been agreed upon and hence that plaintiffs cannot show that there has been a violation or threatened violation of any legally protected interest of theirs. The defendants Seaton and Wirth further assert that the United States is an indispensable party and that this court has no jurisdiction in this action because the United States has not consented to be sued.

The plaintiffs, however, point out that in 1948 an agreement was made between the Government of the District of Columbia and the then Acting Director of the National Park Service whereby the National Park Service, which is the agency charged with the administration, maintenance, improvement and protection of the parks in the District of Columbia, agreed to "make available" to the District of Columbia rights of way through Glover-Archbold Park for the construction of a "parkway", that the context of the agreement appears to contemplate a four-lane divided parkway to form part of a through passenger "traffic way" and that this was in consideration of an agreement by the District of Columbia to turn over to the National Park Service for park purposes certain portions of a right of way known as "Arizona Avenue". The plaintiffs allege that representatives of defendant Conrad L. Wirth, the present Director of the National Park Service, acting under the direction of the defendant Fred A. Seaton, the Secretary of the Interior, have asserted that the National Park Service now intends to comply with said agreement.

The import of this agreement as to Glover-Archbold Park may be reflected in the depositions taken herein by plaintiffs for discovery purposes. Harry T. Thompson, the Superintendent of National Capital Parks, estimated that if the plan of the Highway Department for the parkway in question were put into effect it would mean that fifty percent of the sum total of the acreage in Glover-Archbold Park would be "graded in some manner, either by filling or cutting over that percentage of the acreage." Major

General Ulysses S. Grant, former Chairman of the National Capital Park and Planning Commission testified that the proposed highway is designed "for fast moving traffic" and to get people "through the park and not into the park" and that it would "spoil the * * * park entirely." In an article written by General Grant (Exhibit 2 attached to his deposition) he says:

"Now it is proposed to build a four-lane divided freeway along the whole length of the valley. (Glover-Archbold Park.) Because of its narrowness, the valley's natural beauty would be utterly destroyed by such a freeway, and the traffic would be a mortal danger to the children playing with what space remained to them."

It is without dispute that the defendant Commissioners of the District of Columbia requested and obtained from Congress an appropriation of $880,000 for the fiscal year ending June 30, 1960 to begin construction of the proposed highway, and that an additional $1,150,000 has been sought for the next succeeding fiscal year for the "Glover-Archbold Parkway".

Certainly the record discloses no disavowal by Mr. Seaton and Mr. Wirth of an intention to comply with the 1948 agreement to make available Glover-Archbold Park lands for the highway. And it seems that only this suit has halted the District Commissioners in their purpose to convert such park lands to highway use. For in opposing herein an application for an extension of time for the filing of a paper, attorneys for the Commissioners stated:

"The filing of this suit has indirectly resulted in the cessation of work in connection with the planning, design and construction of Glover-Archbold Parkway * * ."

The concept advanced by the District Commissioners that until the location of the proposed parkway has been settled the plaintiffs cannot possibly show that land specifically dedicated for park purposes will be used for the parkway

is grounded on certain interpretations they have made of the instruments pertaining to the park lands. They assert that the portion of the Archbold tract lying East of the Arizona Avenue right of way is not limited by dedication for use as a park, and this is true, so they say, because in 1933 Mrs. Archbold unconditionally conveyed the fee simple title of that portion to the United States. Further they assert that the District of Columbia reserved the right to build such a highway through the Glover tract when it accepted Mr. Glover's dedication; and that, at any rate, the District of Columbia has control and jurisdiction over a one-hundred foot right of way through the park known as Arizona Avenue.

Plaintiffs have raised factual issues as to all of these contentions. They say that the deed to the United States which Mrs. Archbold made in 1933 of the portion of the Archbold tract lying East of Arizona Avenue had no effect except to waive the restriction she made in the dedication in 1924 that it was "to be effective only in case the land lying East of the proposed 42nd Street and adjacent thereto shall be subdivided" by her, or her heirs or assigns. An inspection of this deed indicates that it recites a consideration of One Dollar and the interest of Mrs. Archbold "in the development of the park system of the National Capital". After describing the land conveyed the deed states:

"Being the same property of which the party hereto of the first part made a conditional dedication to the United States of America, as appears by reference to plat recorded in said Surveyor's Office in Liber 78 at folio 23, *which dedication said party of the first part hereby confirms* and makes final * * * ". (Emphasis supplied.)

In regard to the Glover tract the plaintiffs assert in their proposed amended complaint that the reservation which the District of Columbia included in its acceptance of Mr. Glover's property relating to the right to open highways therein is invalid as not in accord with the dedication itself or with the Act of Congress authorizing acceptance of the same for park purposes.

As to the Arizona right of way, the defendants do not claim that this area alone would be sufficient for the proposed highway. According to the 1948 agreement between the National Park Service and the District of Columbia said area is not adequate either in location or width to construct a properly designed highway. Furthermore plaintiffs have made allegations in their proposed amended complaint which raise questions of fact as to whether the District of Columbia ever acquired jurisdiction over said right of way, and if so whether it has been abandoned.

Concerning the claim of defendants Seaton and Wirth that the United States is an indispensable party and has not consented to be sued the plaintiffs say that Congress authorized acceptance of the dedications for park purposes, and that if these defendants should transfer any of the land in the Glover-Archbold Park for highway purposes (as is contemplated in the 1948 agreement) then their act would not be the act of the sovereign within the doctrine of the sovereign's immunity from suit.

A suit for specific relief against an officer of the sovereign is not always regarded as a suit against the sovereign itself. This was demonstrated in the Lee decision which has held its ground for over seventy years. United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L. Ed. 171. The Arlington estate of the wife of General Robert E. Lee was seized and sold in January 1864 to the United States for non-payment of taxes. These taxes had in fact been tendered by an agent but the official charged with the collection of such taxes in the "insurrectionary district" involved had erroneously interpreted his authority as permitting receipt of the taxes only from the owner in person. After seizure, the United States established a fort and cemetery on the land. The plaintiff, George W. P. C. Lee, in whom title to

the Arlington estate had vested if its seizure could not be justified, brought an action of ejectment against the governmental custodians of the estate. After the overruling of a suggestion by the Attorney General of the United States that the court was without jurisdiction because the property was in possession of the United States, the court upheld the plaintiff's claim against the custodian defendants since the tax sale was void and they could not justify their possession by proof of a valid title in the Government. The Supreme Court affirmed, holding that the lower court was competent to decide the issues between the parties to the suit even though the United States was not a party therein and had expressly declined to submit itself to the jurisdiction of the court.

In a dissenting opinion in Larson v. Domestic & Foreign Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628, Mr. Justice Frankfurter gives a comprehensive review of Supreme Court decisions in which the doctrine of "Sovereign immunity" was raised, including Lee, supra.

■ As to the sovereign immunity claim made by Mr. Seaton and Mr. Wirth in the instant action the court believes that the District Court has jurisdiction to determine its own jurisdiction by proceeding to the merits of the issue raised. Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209.

■■ The cases generally hold that a governing body which accepts land in trust for park purposes is without power to divert such land to other purposes except by a procedure involving condemnation, and that building a through highway across land which has been dedicated solely for park purposes constitutes such a diversion. See Annotations at 18 A.L.R. 1246, 1248, 63 A.L.R. 484, 486, 144 A.L.R. 486, 492. It is likewise generally held that diversion from the use for which the land was dedicated may be restrained. Reichelderfer v. Quinn, 287 U.S. 315, 320, note 3, 53 S.Ct. 177, 77 L.Ed. 331. And the dedicator or one claiming under him, ordinarily may enforce the uses for which the dedication was made and prevent a diversion therefrom. 26 C.J.S. Dedication § 69, 16 Am. Jur., Dedication, Sec. 67.

■ The court is convinced that an actual controversy does exist here as to the authority of the defendants Seaton and Wirth to make park land available for the contemplated highway and as to the authority of the District Commissioners to convert such park land to highway use, that there are herein genuine issues of material fact, and that the court should not grant any of the motions to dismiss or for summary judgment.

The Motion to Intervene

The parties proposing to intervene as plaintiffs assert that the construction by defendants through Glover-Archbold Park of a high-speed, limited-access divided public highway of four or more lanes, would be in violation of the rights in the park of proposed intervenors as cestuis que trustent and as cestuis que usent. They seek a declaration to that effect, and also an injunction to restrain the proposed highway construction.

■ Land dedicated to the use of the public for park purposes is held in trust for that use, and a resident of the city or town in which the park is located may maintain a suit in equity to prevent diversion of the use of such land, since "courts of equity always interfere at the suit of a cestui que trust or a cestui que use to prohibit a violation of the trust, or a destruction of the right of user." Davenport v. Buffington, 8 Cir., 97 F. 234, 236, 46 L.R.A. 377. Also see Reichelderfer v. Quinn, 287 U.S. 315, 320, note 3, 53 S.Ct. 177, 77 L.Ed. 331, and the discussion in Douglass v. City Council, 118 Ala. 599, 24 So. 745, 43 L.R.A. 376.

■ Some of the proposed intervenors are organizations. It has been held that where the rights of individual members of an association are involved the association has standing to sue to protect their interests. McArthur Liquors, Inc. v. Palisades Citizens Ass'n, Inc., 105

U.S.App.D.C. 180, 265 F.2d 372, 374. National Ass'n for Advancement of Colored People v. State of Alabama ex rel. Patterson, 357 U.S. 449, 459–460, 78 S. Ct. 1163, 2 L.Ed.2d 1488.

The requested intervention is allowable under Rule 24(b) of the Federal Rules of Civil Procedure which provides that the court may permit intervention when an applicant's claim and the main action have a question of law or fact in common.

### Rulings on the Motions

The motions of defendants to dismiss or for summary judgment will be denied. The motion of plaintiffs to drop certain defendants and for leave to file an amended complaint will be granted. The motion of proposed intervenors to intervene as plaintiffs will be granted. Appropriate proposed orders in accord with these rulings should be submitted.